```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

JOHN F. NYACK,                    :
                                  :
     Plaintiff,                   :
                                  :
v.                                :   No. 3:03CV839(DJS)
                                  :
SOUTHERN CONNECTICUT STATE        :
UNIVERSITY,                       :
                                  :
     Defendant.                   :
```

### MEMORANDUM OF DECISION

Plaintiff, John Nyack, brings this action against Southern Connecticut State University ("SCSU") alleging race or national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq</u>. Defendant SCSU has filed a motion for summary judgment (dkt. # 19) pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.  For the reasons set forth herein, SCSU's motion is **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

#### A. FACTS

Nyack, after a thirty-year tenure with the New Haven police department, began working for SCSU as a Police Officer on August 8, 2000.  Nyack is from Puerto Rico and is Hispanic.  Nyack worked without issue at SCSU until February of 2001, when he claims that his supervisor, Sergeant Todd Hankey, subjected him to harassment on the basis of his race and national origin.  The

alleged harassment ended in January of 2002 when Hankey became the supervisor of a different shift.

### B. MOTION TO STRIKE

In its motion to strike (dkt. # 29), SCSU contends that Nyack's testimony offered in support of his denials of paragraphs 12, 25, 32, 40, 50, and 53 of SCSU's Rule 56(a)1 statement and his evidentiary support for assertions of material fact numbers 1, 3, 4, 6, 7, 8, and 11 in his Rule 56(a)2 statement should be stricken from the record.  Nyack contends that his responses and assertions are supported by admissible evidence and should not be stricken.

SCSU claims that several statements Nyack offers are inadmissible hearsay.[1]  A party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial." Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1985) (citations omitted).  "A court may therefore strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements."  Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999), abrogated on other grounds, Reeves v. Sanderson Plumbing

---

[1] It appears that these statements would be offered for the truth of the matters asserted therein, and are therefore subject to a hearsay objection.

Products, Inc., 530 U.S. 133, 148 (2000).

At his deposition, Nyack provided the following testimony, which Nyack cites as his evidentiary support for denying paragraphs 12 and 25 of SCSU's Rule 56(a)1 statement and for asserting material fact numbers 1, 3, and 4 in his 56(a)2 statement:

> A   . . . There's a supervisor on campus that told me that Todd Hankey told him that I was trying to pass myself off as white.
>
> Q   Who is that supervisor?
>
> A   Sergeant David Long.
>
> Q   And when did he tell you that, do you remember?
>
> A   That was soon thereafter that Sergeant Putterman told me that Todd Hankey cannot stomach me.  It was maybe about a week after that.
>
> Q   Do you remember when that was?
>
> A   I don't remember the exact year.
>
> Q   Any time frame?
>
> A   It was just before I started having problems with Todd Hankey.
>
> Q   And how did Putterman know that Todd Hankey couldn't stomach you?
>
> A   Todd Hankey told Putterman.  And Putterman told me.  Stephanie Bernard witnessed both of them conversing.  She told me also.
>
> Q   That he couldn't stomach you.  And what does have to do with your being Hispanic?
>
> A   Soon thereafter, Dave Long told me Todd Hankey told him that I was trying to pass myself off as white.  So, I assume that it's because, not of my

age, because I'm Hispanic.

(Dkt. # 24, Nyack Dep. at 76:17-77:17).  Nyack, in the form of his own testimony about what another person told him, attempts to admit two statements made by Hankey: (1) that Hankey believed Nyack was trying to pass himself off as white despite being Puerto Rican, which was relayed to him by Sergeant David Long; and (2) that Hankey could not stomach Nyack, which was relayed to Nyack by Sergeant Putterman.

The first statement is offered in the form of two out of court statements, each of which is subject to a hearsay objection.  See Fed. R. Evid. 805.  Nyack claims that both Hankey's statement to Long and Long's statement to him are vicarious admissions of a party-opponent because they are "statement[s] by the party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship."  See Fed. R. Evid. 801(d)(2)(D).  A party seeking to admit a statement as a vicarious admission must demonstrate the following: "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency. . . ."  Pappas v. Middle Earth Condominium Ass'n, 963 F.2d 534, 538 (2d Cir. 1992).  "The authority granted in the agency relationship need not include authority to make damaging statements, but simply the authority

to take action about which the statements relate." Id. at 539. "[T]he declarant need not be the 'final decisionmaker' on employment matters for his statement on those matters to be deemed within the scope of his agency.  Rather, he need only be an advisor or other significant participant in the decision-making process that is the subject matter of the statement." U.S. v. Rioux, 97 F.3d 648, 661 (2d Cir. 1996).

Both components of the first statement are admissible as vicarious admissions.  Hankey and Long were both SCSU sergeants, and therefore were agents of SCSU.  The statements were made during the course of this agency relationship and were within the scope of this agency relationship because both sergeants exercised supervisory authority on behalf of SCSU over Nyack; a discussion about any ill will Hankey harbored toward Nyack would therefore be a matter within the scope of the employment decision-making process.  Cf. Evans v. Port Authority of New York and New Jersey, 192 F. Supp. 2d 247, 262-63 (S.D.N.Y. 2002) (holding that plaintiff's testimony relaying a statement from a co-worker relaying a statement from plaintiff's supervisor regarding employment matters was not a vicarious admission because the co-worker did not have supervisory authority over the plaintiff and therefore was not part of the decision-making process).

The result is the same regarding defendant's objection to

the admission of Nyack's testimony conveying Putterman's statement about what Hankey told him.  Putterman is also a sergeant, and is therefore involved in the decision-making process for employment matters concerning Nyack.  Therefore, he has the authority to speak on SCSU's behalf regarding matters pertaining to Nyack's employment.  SCSU's objections to Nyack's evidentiary support for his denials of paragraphs 12 and 25 of SCSU's Rule 56(a)1 statement and for his assertions of material fact numbers 1, 3, and 4 in his 56(a)2 statement are overruled.

SCSU also objects to Nyack's offer of proof in support of his denials of paragraphs 50 and 53 of SCSU's Rule 56(a)1 statement and for his assertion of material fact number 8 in his 56(a)2 statement.  Nyack offers his testimony[2] about statements made to him by Ron Strickland, a shooting instructor, relating statements Hankey made to Strickland at a shooting range prior to Strickland's administration of a weapons proficiency test to Nyack.  (See, e.g., Dkt. # 24, Nyack Dep. at 117:19-118:1 ("[Strickland] says, 'Now, [Hankey] told me some things that I'm a little concerned about, John. . . . [Hankey] told me you carry extra bullets. . . .  And he just sort of gave me the indication

---

[2] Nyack relies upon pages 109 through 121 of his deposition, which is a narrative of events that occurred during his attempt to obtain weapons certification.  His offer contains many statements subject to a hearsay objection, many of which are obviously vicarious admissions.  Only the double hearsay statements attributed to Hankey with probative value are discussed herein.

that you cheat.'")).  Pursuant to the foregoing analysis, Nyack's testimony is admissible because both Hankey, as an SCSU employee, and Strickland, as the administrator of a proficiency test required and arranged by SCSU, are agents of SCSU, and the subject matter of the statement concerns the proficiency test, which is within the scope of Strickland's agency relationship with SCSU.  Therefore, Hankey's statement to Strickland and Strickland's statement to Nyack are both admissible in the form of Nyack's testimony, and SCSU's objections to the admissibility of Nyack's evidentiary basis for his denials of paragraphs 50 and 53 of SCSU's Rule 56(a)1 statement and for Nyack's assertion of material fact number 8 in his 56(a)2 statement are overruled.

SCSU also poses double hearsay objections to Nyack's evidentiary support for his denial of paragraph 32 of SCSU's Rule 56(a)1 statement and for assertion of material fact number 11 in his Rule 56(a)2 statement.  In support of his denial of paragraph 32, Nyack testified that Elmer Sakowski, a SCSU dispatcher, heard Hankey tell Lieutenant Hemingway, "We got Nyack," (dkt. # 24, Nyack Dep. at 82:11), after discovering that Nyack may have violated SCSU sick leave policy.  Sakowski's statement to Nyack cannot be admitted as a vicarious admission because Sakowski is outside the personnel decision-making hierarchy governing Nyack's conduct.  In support of his assertion of material fact number 11, Nyack testified that SCSU Officer Mark Tullo, whom Hankey

assigned to investigate a report of damage to a vehicle Nyack filed, told him that "[Hankey] doesn't believe you.  That the car was struck.  He thinks you struck the car and drove off."  (Dkt. # 24, Nyack Dep. at 31:21-23).  Tullo's statement to Nyack is admissible because Tullo is an agent of SCSU and investigation of the damage report is within the scope of the agency relationship.  Therefore, SCSU's objection to Nyack's evidentiary support for his denial of paragraph 32 of SCSU's Rule 56(a)1 statement is sustained, and its objection to Nyack's assertion of material fact number 11 in his Rule 56(a)2 statement is overruled.

The remainder of objections SCSU poses are overruled.  The remaining responses and assertions to which SCSU objects are technically appropriate and should not be stricken; the court will, however, consider SCSU's arguments when determining the probative value of Nyack's offer.

## II. DISCUSSION

Nyack asserts the following claims: (1) race or national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and (2) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  SCSU claims that Nyack has not brought forth sufficient evidence to sustain either of his claims.

## A. STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'"  American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).  A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all inferences and ambiguities in a light most favorable to the nonmoving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Id.

B. HOSTILE WORK ENVIRONMENT

Nyack claims that Hankey harassed him on the basis of his race or national origin.  In order to succeed on this claim, Nyack must offer evidence from which a reasonable trier of fact can make two dispositive conclusions.  See Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997). First, the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted); see also Faragher v. City of Boca Raton, 524 U.S. 775 (1998).  Second, a specific basis exists for imputing the conduct that created the hostile environment to the employer.  See Perry, 115 F.3d at 149.

In order to prevail, Nyack must be able to show that his workplace was permeated with discriminatory intimidation, ridicule, or insult that was sufficiently severe or pervasive to alter the conditions of his employment.  See Gallagher v. Delaney, 139 F.3d 338, 347 (2d Cir. 1998); Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995). A court determines whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance." Harris, 510 U.S. at 23. The incidents must be "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Faragher, 524 U.S. at 786-788 n.1 (citations omitted); Perry, 115 F.3d at 149 ("[O]ne of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere . . .– as well as evidence of specific hostility directed toward the plaintiff– is an important factor in evaluating the claim.") (internal quotation marks and emphasis omitted). Simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment, see Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998), but rather that "conduct must be extreme to amount to a change in the terms and conditions of employment. . .," Faragher, 524 U.S. at 788.

Thus, harms suffered in the workplace are cognizable under Title VII, even when they are not the result of "tangible employment actions," if they arise from conduct (1) that is "objectively" severe or pervasive– that is, if it creates "an environment that a reasonable person would find hostile or abusive" (the "objective" requirement), Harris, 510 U.S. at 21, (2) that the plaintiff "subjectively perceive[s]" as hostile or abusive (the "subjective" requirement), id., and (3) that creates such an environment because of plaintiff's race (the "prohibited

causal factor" requirement), see Oncale, 523 U.S. at 80.

Nyack has demonstrated that he found Hankey's behavior abusive, and that disputed issues of material fact remain regarding whether Hankey's behavior was severe and pervasive enough to change the conditions and terms of Nyack's employment. Nyack claims that, during the eleven-month period during which Hankey was his supervisor, Hankey did the following: (1) assigned Nyack a vehicle designated as unsafe, which had not been used for two weeks prior, during inclement weather despite the fact that a safe vehicle was available; (2) coerced a co-worker into filing a complaint about Nyack's behavior; (3) caused Nyack to be unfairly investigated for violations of SCSU's sick leave policy; (4) interfered with Nyack's weapons recertification at a shooting range by refusing to leave and accusing Nyack of cheating; (5) repeatedly assigned Nyack unreliable patrol vehicles; and (6) repeatedly denied Nyack's requests for vacation days in a humiliating and derogatory manner. These actions are not stray comments or harmless banter; rather, Hankey used his supervisory authority to demean and humiliate Nyack. A reasonable jury could find that the harassment was "of such a quality or quantity that reasonable employee would find the conditions of [his] employment altered for the worse." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 70 (2d Cir. 2000).

Additionally, Nyack's offer of proof "permit[s] the

inference that plaintiff was subjected to a hostile environment because of" his race or national origin. Gregory v. Daly, 243 F.3d 687, 694 (2d Cir. 2001). Nyack offers evidence that Hankey thought Nyack was trying to pretend that he was white despite being Hispanic, and that Hankey disliked Nyack for this reason. A reasonable trier of fact could infer that Hankey subjected Nyack to a hostile work environment because Nyack was Hispanic.

In sum, Nyack may be able to prove that Hankey subjected him to humiliating and derogatory treatment on account of his race or national origin, and that this treatment was severe and pervasive enough to alter the terms and conditions of Nyack's employment. Therefore, SCSU's motion for summary judgment is denied with respect to this claim.

## C. RETALIATION CLAIMS

The allocation of burdens of proof in retaliation cases follows the framework announced by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), where the Supreme Court established an "allocation of the burden of production and an order for the presentation of proof in Title VII cases." Under that framework, a plaintiff alleging a violation of the anti-discrimination statutes establishes a prima facie case by showing he: (1) was a member of a protected class; (2) was qualified for the position he held; (3) suffered an adverse employment action; (4) in circumstances giving rise to an

inference of discrimination.  See Schnabel v. Abrahmson, 232 F.3d 83, 87 (2d Cir. 2000); see also Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 253 (1985) ("Plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.").  If the plaintiff establishes a prima facie case, the employer has the burden of articulating a "legitimate, nondiscriminatory reason" for the adverse employment action. Stern v. Trustees of Columbia University, 131 F.3d 305, 312 (2d Cir. 1997).  If the employer does so, the plaintiff must prove by a preponderance of the evidence that the employer's proffered explanation is unworthy of credence, and that the true reason for the employer's action was discrimination. See id.; Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996).  To establish a prima facie case for retaliation, a plaintiff must show that (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  See Mack v. Otis Elevator Co., 326 F.3d 116, 129 (2d Cir. 2003); Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988).

   Nyack's claim fails as a matter of law because he cannot

prove that SCSU took an adverse employment action against him. "An 'adverse employment action' is one which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)). Examples of adverse employment actions "include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. (quoting Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)). Nyack does not offer any evidence indicating that he suffered a comparable loss. Therefore, his retaliation claims fails as a matter of law.[3]

---

[3] To the extent Nyack brings a claim for race discrimination, his claim fails for the same reason.

## III. CONCLUSION

For the above reasons, SCSU's motion for summary judgment (dkt. # 19) is **GRANTED in part** and **DENIED in part.** Judgment shall enter in favor of SCSU on the Second Cause of Action of Nyack's First Substituted Complaint. SCSU's motion is denied in all other respects. SCSU's motion to strike (dkt. # 29) is **GRANTED in part** and **DENIED in part** as set forth herein.

So ordered this 24th day of March, 2006.

**/s/DJS**
**_____**
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**